GEORGE C. CARR *vs.* GEORGE A. CARPENTER, Jr.

WASHINGTON—MARCH 26, 1901.

PRESENT : Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Littoral Rights. Sea-Weed.*

The right to take sea-weed stranded upon a beach belongs to the littoral proprietor (so long as the State asserts no claim), upon the doctrine of accession, and is not a public right.
History of littoral rights, and review of Rhode Island cases.

TRESPASS ON THE CASE for disturbance of a right to take sea-weed. Heard on demurrer, and demurrer overruled.

DOUGLAS, J. The plaintiff, who is the owner of land bounding upon the sea, brings this action of trespass on the case, claiming damage for the disturbance of his easement or incorporal right to take the sea-weed which has become stranded on the shore adjacent to his land.

The defendant demurs to the declaration, on the ground that the right to take sea-weed landed upon the beach below high-water mark is in the public and not in the owner of the adjacent upland.

(1) The demurrer must be overruled. The right to take sea-weed is not one of the rights which the State holds in trust for the public, like navigation or fishery, but a private right in the shore which belongs to the land bordering upon the beach, and which the littoral owner may control and convey.

The original right to the shore under the common law is in the sovereign. By early grants in England, certain portions of the shore were given to the lords of manors, the sovereign retaining for the use of the public only the right of navigation in some cases, and in others only the rights of navigation and fishery. So in this country the fee of the shore was given by colonial ordinance in some cases to the owner of the adjacent upland, as in Massachusetts in 1641; while in other colonies, as in Rhode Island, it remained in the sovereign, now represented by the legislature of the State. But whether the fee between high and low-water mark belongs to the State or to individuals, the respective rights of the parties are not generally affected by that circumstance.

"In this country the common rights of the people" (in tide-waters) "both before and since the Revolution, may be said generally to be confined to what is of public use; while the owners of lands adjoining navigable waters are permitted to enjoy what remains of the rights and privileges in the soil beyond their strict boundary lines, after giving to the public the full enjoyment of their rights." Gould on Waters, § 168.

The State may not give up its right to control the private rights, as well as the public ones, but it may suffer the littoral proprietor to acquire, as against all the world but itself, these private rights which naturally fall to him as the first appropriator, so that he becomes by the common law of the State the owner of these rights with the exclusive power to exercise them as long as this does not interfere with the public rights of which the State reserves control.

The right of access to the sea is one which the State cannot arbitrarily take from the littoral owner. The right to build wharves below high-water mark is one which in this State is attached to the upland, but which the State may regulate in the interest of the public right of navigation. The court say, in *Engs* v. *Peckham*, 11 R. I. 210, p. 223 : "At common law the erection of a wharf in tide-waters is not indictable as a nuisance unless it obstructs navigation. In this State this doctrine has been liberally applied for the benefit of riparian proprietors. Such proprietors have been very freely permitted to erect wharves and even to make new land by filling the flats in front of their land. We are not aware that the State has ever laid claim to any wharf so built or any land so made unless the cove lands can be considered an exception."

So the right to take sea-weed and drift-stuff, and the right to take sand and stones from the beach have always been recognized and upheld by our courts as rights attached to the ownership of the upland bordering on the sea. No doubt the State as owner of the fee might limit and perhaps take away these rights; at any rate, the sovereign power could have done so before the "long-continued usage had acquired the force of law," Gould, § 168 ; but the littoral owner now holds these rights in the beach to the exclusion of the public or other individuals.

The first case in this country upon the subject is *Emans* v. *Turnbull*, 2 Johns. 313, decided in 1807. The locus was a barren strip of land bordering on tide-water. The defendant had forcibly prevented the plaintiff from taking any sea-weed which had collected on the beach adjacent to this land, and justified his assault by claiming that sea-weed, when it

lodged upon the beach, became his by reason of his ownership of the upland. The sea-weed was taken, evidently, below high-water mark, for the report says, p. 317 : "It appeared that if the sea-weed were left on the beach it would be driven up by the sea, form a row, and protect the bank from being washed and the sand from being thrown upon the neck." In New York the fee of the shore is in the State, except as it has been given to others by patent, so that this early case is exactly in point. After verdict for the defendant the case came before the Supreme Court, of which James Kent was then Chief Justice, and he delivered the opinion, denying the motion for a new trial. After deciding that the defendant was the owner of the neck, he continues : "The next point in the case is whether the sea-weed thrown by the sea upon the shore or beach of the neck did thereby vest in the owner of the soil or belong to the first occupant. The plaintiff's right, if any, rested upon occupancy : . . . Any stranger would have had an equal right to take it. The sea-weed thus thrown up by the sea may be considered as one of those marine increases arising by slow degrees, and, according to the rule of the common law, it belongs to the owner of the soil. The rule is that if the marine increase be by small and almost imperceptible degrees, it goes to the owner of the land ; but if it be sudden and considerable, it belongs to the sovereign. (2 Black. Com. 261. Harg. Law Tracts, 28.) The sea-weed must be supposed to have accumulated gradually. The slow increase and its usefulness as a manure and as a protection to the bank will, upon every just and equitable principle, vest the property of the weed in the owner of the land. It forms a reasonable compensation to him for the gradual encroachments of the sea, to which other parts of his estate may be exposed ; this is one sound reason for vesting these marine increments in the proprietor of the shore. The *jus alluvionis* ought in this respect to receive a liberal encouragement in favour of private right."

This case was approved by Angell in his book on tidewaters, a work which embodied the results of accurate research and discriminating judgment, and which must be

considered good authority as to the law of Rhode Island from the earliest times. In Massachusetts, in *Phillips* v. *Rhodes*, 7 Met. 322, the Supreme Court approve Chief Justice Kent's opinion, and it has ever since been followed in Massachusetts, Maine, and New Hampshire. The Supreme Court of Connecticut, in *Church* v. *Meeker*, 34 Conn. 433, say of *Emans* v. *Turnbull*: "The decision, however, establishes a rule where one did not exist and was needed; and although it favors the riparian proprietor, it does injustice to no one. And it may be sustained also without a serious departure from principle, if we look at the fact that the weed when cast upon the land belongs to no one, and the owner may justly, as well as equitably, be deemed the first occupant. The decision has been followed in Massachusetts and elsewhere, and there being none the other way we are disposed to follow it also, for the sake of uniformity and certainty in respect to a matter of growing importance."

The Connecticut case itself is not authority, for a statute in Connecticut regulated the taking of sea-weed from shores owned by the State. The question, however, arose again in Connecticut, and the court, in *Mather* v. *Chapman*, 40 Conn. 382, decide that sea-weed cast upon the beach between high and low-water mark does not belong to the littoral proprietor, but to the public—or first taker—and they repudiate the idea of Chief Justice Kent that the doctrine of accession can have any application, because the weed does not lodge upon the land of the private owner, but only near to it. The learned court overlooked the fact that all accretion to upland is formed by deposit upon the adjoining flats. The deposit of weed retains the sand or soil which otherwise would be washed away, and a nucleus of augmentation is formed which by slow degrees becomes perceptible and permanent. If among the private rights of the littoral owner we must class that of filling out and of acquiring newly-made soil, as all agree, why should he not be entitled to this natural accretion as well? This seems to us to be no violent stretch of principle to serve a natural equity.

But whatever may be our conclusion as to the logical

grounds for the doctrine, it is certain that it has been recognized as the common law of this State whenever the question has arisen. The authority of Angell on Tide Waters and *Emans* v. *Turnbull* were approved by the court in *Kenyon* v. *Nichols*, 1 R. I. 106, which reviews and approves a former unreported decision. The defendant pleaded that by general custom he and all the inhabitants of the State had the right to take sea-weed from the shore, and the demurrer of the plaintiff to this plea was sustained. The court say, p. 110 : "The question raised by the defendant's plea in bar was decided by the court at its August Term, 1846, in this county, in the action of *Knowles* v. *Nichols*. That was an action of trespass for taking and carrying away sea-weed from the lot mentioned in the declaration of the present plaintiff, and evidence was offered on the part of the defendant to prove by custom a right in all the inhabitants of the State to take sea-weed from said lot for the purposes of cultivation. The court ruled that this evidence was not admissible ; that such a right in the soil of another could not be established by custom; such right can only be maintained by prescription.

"Upon a reconsideration of the question and a careful review of the authorities, we are unanimously of opinion that the ruling of the court in that case was correct. That decision is supported not only by the authorities cited by the plaintiff's counsel, but by the current of authorities from Gatewood's case and the cases of *Hardy* v. *Hollyday* and *Grimstead* v. *Marlow*, down to the present time, 6 Rep. 60, 4 T. R. 717.

"The claim made by the defendant is to have an interest or *profit a prendre* in the soil of another. This point is sustained by the reasons given in the adjudicated cases for vesting marine increments in the proprietor of the adjoining land. *Emans* v. *Turnbull*, 2 Johns. 313. Angell on Tide Waters, 260."

Judge Curtis, in the United States Circuit Court, in *Knowles* v. *Nichols*, 2 Curt. 571, thus refers to this case, p. 577 : "In *Kenyon* v. *Nichols*, 1 R. I. 106, an action on the case was sustained for disturbance of the plaintiff's common-

able right in this very land by taking sea-weed therefrom. I consider it, therefore, to be the established law of the State, which seems to me to be consistent with sound principles, that the right to take sea-weed and sea-manure from a beach is a lawful commonable right. It was also argued that the Supreme Court of the State had decided that the general treasurer had not authority to convey the soil of this ten-acre common lot, and that the title was now in the State.

"I am inclined to agree with that learned court in this conclusion, though I have not had occasion very fully to examine its grounds. But it is quite consistent with the rights claimed by the plaintiff that the title to the soil should be in the State. The defendant, however, also insists that the rights of common are in all the inhabitants of the State. What has been above said indicates my opinion on this subject."

The next Rhode Island case in which the subject was considered is *Bailey* v. *Sisson*, 1 R. I. 233. This was a bill for partition of the right to take from a beach in Little Compton sea-weed and sand. The court, after deciding that such a right is peculiarly within the jurisdiction of a court in equity, and that the parties are joint owners of the right as appurtenant to their upland property, enter a decree beginning as follows: "That partition be made of the said right to take sea-weed and sand from the White Farm beach in proportions corresponding to the respective interests of the parties in the lands to which said right is appurtenant," etc. The beach in question being in Little Compton may have been formerly under the jurisdiction of Massachusetts, where the fee of the littoral proprietor extends to low-water mark. If so, no mention is made of that circumstance.

The right, as appurtenant to the adjacent farm and uplands, is unconditionally recognized.

*Hall* v. *Lawrence*, 2 R. I. 218, construed a grant of "free liberty of carrying away gravel and sea-weed off the beach" belonging to part of the farm, and also "stones below high-water mark, and also liberty to tip the sea-weed on the bank" of the same part of the farm, to create a right of

common appurtenant limited by the requirements of the land to which it appertained and which passed with a right-of-way incident to it on conveyance of such land with its appurtenances. No contention was made that these were rights which the owner of the farm bordering on the beach did not possess. The court dealt with all these rights as real and valuable, and very carefully examined and decided the effect upon them of the conveyances of the estates to which they were attached.

*Watson* v. *Knowles*, 13 R. I. 639, holds that the grant from a riparian owner of "all the sea-manure and drift-stuff which lands on the west shore" did not include goods from a wreck. The case touches the question we are considering only by recognizing the right of the riparian owner to sea-manure, and, by implication, his power to grant the right to another.

In *Middletown* v. *Newport Hospital*, 16 R. I. 320, this court issued an injunction against the owners of land bordering upon the ocean in Middletown, where the State has always held the fee below high-water mark, to enforce certain privileges in the shore in favor of the inhabitants of the town, covenanted to them by the owner's ancestor, amongst these rights being the right to a landing-place, and the right to take sea-weed, sand, shells, and "all such drift-stuff as any of the inhabitants aforesaid shall take up in the surf or under high-water mark *against* said commonage or beach."

After this uniform line of decision this court, in *Allen* v. *Allen*, 19 R. I. 114, enumerated among the private rights which belong to the littoral proprietor that of taking sea-weed stranded on the beach adjacent to his land.

To alter the rule after it has been so well settled and so long acquiesced in would disturb rights of property which in many cases have largely fixed the values given and received for littoral estates, and this alone would forbid the court to make such change without the clearest proof of error. But we have no doubt that the rule is founded in good law as well as upon natural equity : in the case where the proprietor owns to low-water mark, upon his ownership of the soil ;

in the case where he owns only to high-water mark (the State not asserting any claim), upon the doctrine of accession.

Demurrer overruled, and case remitted to Common Pleas Division for further proceedings.

*William P. Sheffield, Jr.*, for plaintiff.
*A. B. Crafts*, for defendant.