SIDNEY R. TABER et al. vs. WILLIAM H. HALL et al.

PROVIDENCE—FEBRUARY 26, 1902.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) Of Boundary Lines of Land Covered by Public Tide-Water.    Plats.
Estoppel.

In equitable proceedings under Gen. Laws cap. 266, for the settlement of
the boundary lines of lands covered by public tide-water, it appeared
that all of the tide-flowed land embraced in the suit lay between upland
formerly owned by Joseph Burgess and the harbor line as now estab-
lished.   Joseph Burgess died in 1829, and his farm was divided by com-
missioners appointed by the Court of Probate in 1830-1.   The commis-
sioners set off to J. P. B. lot 6 ; to F. W. lot 5, next south of lot 6 ; to
D. C. lot 4, next south of lot 5 ; and to J. B. lot 7, next north of lot 6 ;
respondent H. acquired title to the tide-flowed lands appertaining to lot
6, and one Benjamin Allen acquired title to lots 4, 5, and 7, and to the
tide-flowed lands appertaining thereto.   These lots, as marked on the par-
tition plat, extended only to high-water mark, and they were set off by
their numbers on the plat, to which reference was had for quantity and
boundaries.   Subsequent to the partition, J. P. B. quitclaimed to Benja-
min Allen all his interest north of his north line, describing the course,
" and to continue said course to the channel of Providence river, or so
far as they have a right so to do."   This was accepted by Benjamin
Allen.

Said Allen had his upland and his interests in tide-flowed land platted in
1832 and again in 1856, both of which plats extended eastward to the
harbor line as then established.   The north line of the J. P. B. lot on said
plats, being the southern line of the Allen north section, was delineated
as a straight line from the P. turnpike to the harbor line as given on the
Burgess division plat, which line had been agreed on by J. P. B. and
Benjamin Allen.   The south line of the J. P. B. lot, being the northerly
line of the southern section of the Allen land on said Allen plats, was
nearly parallel with the north line of said J. P. B. lot as delineated
on the Joseph Burgess partition plat on the same course to the harbor
line.   On said Allen plats a street named Friend street was delineated
on the north side of the southern section of the Allen land, being the
south line of the J. P. B. land, half of said street being taken from each
proprietor.   The Allen land was conveyed by mesne conveyances to the
petitioners.   All of the conveyances made by the petitioners' predeces-
sors in title described their north line as bounding on land of J. P. B.
while recognizing the Allen plat, and the only conveyance made by peti-
tioners bounded on the center line of Friend street and made no mention
of the J. P. B. land.   Neither respondent Hall nor his predecessors ever
referred to the Allen plats, nor did respondent Hall or any of his prede-

cessors derive title in any way from petitioners or their predecessors by instrument depending upon the Allen plats :—

*Held,* that boundary lines so far as fixed between ancestors in title would bind their successors ; but unless the ancestors fixed rights and boundaries, there was no privity between successors merely because the land once belonged to a common ancestor.

*Held,* further, that the division of the Joseph Burgess estate in 1830–1 bounded the heirs merely as to the land above high-water mark, at which mark the boundary lines fixed in said division stopped ; so there was no privity between the heirs of Joseph Burgess or their successors in title by virtue of said division outside of such high-water mark.

*Held,* further, that, as neither Hall nor his predecessors had ever acted on the Allen plats with the acquiescence of petitioners so that it would be inequitable for petitioners not to hold themselves bound by them, the petitioners were not estopped by said Allen plats.

*Held,* further, that respondent Hall's southerly line had not been established before the commencement of the proceedings, and that the report of the commissioners should be approved.

EQUITABLE PROCEEDINGS under Gen. Laws cap. 266, for the settlement of the boundary lines of lands covered by tide-water. Heard on exceptions to report of commissioners, and report confined.

ROGERS, J. This is an equitable proceeding under Gen. Laws R. I. cap. 266, for the settlement and determination of the boundary lines of land covered by public tide-water, said chapter having been originally enacted April 24, 1885, and being Pub. Laws cap. 510.

So much of section 1 of said chapter as applies to land in Providence county, is as follows, viz. :

"SECTION 1.   Any person having any interest in land bordering on public tide-water, whenever a harbor-line shall have been confirmed and established in front of or adjacent to said land, may apply by petition to the appellate division of the supreme court in Providence . . . for the settlement and determination of the lines and boundaries of his interest and of the interests of all others in the land covered by public tide-water within such harbor-line."

The act further provides that the court may appoint three commissioners to make a survey of said land within and adjacent to said harbor line, covering such area of land as said

commissioners may deem necessary to include the interests of all persons whose rights may be affected by the determination of such lines, and to determine the boundary lines of the interests of all the persons interested as aforesaid, and to report to the court the boundaries so established, with a plat of said land, said report and plat when approved by the court and recorded as required by said act shall forever fix and determine the rights of all persons and parties, except when definite boundary lines have been established by parties legally authorized so to do.

The petitioners, Sidney R. Taber and Mary Taber, derive their title under the will, and succeed to the rights of, Henry M. Taber, deceased, who was the grantee of the respondent, Henry L. Aldrich. The latter acquired title by deed from the heirs of Benjamin Allen, who purchased the interests of several of the heirs of Joseph Burgess other than James (or James P.) Burgess, the interests of the latter having been purchased by the respondent, William H. Hall, and being now held by him.

The respondents are the said Henry L. Aldrich, the said William H. Hall, one William M. Harris, who acquired title by deed from the petitioners since the beginning of these proceedings and who has since been made a party by amending the petition, and a number of other riparian owners who need not be more particularly mentioned as no one, other than said Hall, has taken any exception to the commissioners' report, and none of their interests will be affected by the determination of said exception.

The commissioners have filed their report with the accompanying plat in the clerk's office, and the question now before us is upon approving said report and plat. But one of the respondents, William H. Hall, has excepted to the report, and that exception relates only to his south line as determined by the commissioners, which divides his land from that of the petitioners or of their releasee, the said respondent William M. Harris.

(1) In determining the boundary lines of adjoining interests, as appears by their report, the commissioners have taken as

a governing principle by which to proceed, that, wherever the parties in interest or their respective ancestors in interest, have heretofore fixed and established boundary lines for themselves by agreement or recorded conveyance, or where boundary lines have been heretofore fixed by some legal proceedings, they would as such commissioners adopt such lines to be the proper boundary lines of such interests; and that wherever no boundary lines had been so agreed upon between the owners of adjoining interests, or their ancestors in interest, or by some legal proceedings, then they would follow the principle adopted in the case of *Aborn* v. *Smith*, 12 R. I. 370.

The causes of exception by the said Hall are:

"*First.* That the commissioners have entirely omitted from their consideration the fact that it appears from the testimony and the plats introduced in said cause that the boundary between the estate now owned by said Hall and that now owned by William M. Harris has heretofore been fully determined.

"*Second.* That from the evidence it clearly appeared that the entire tract now owned by both said Hall and said Harris was originally a portion of the estate of one Joseph Burgess who was a common ancestor in title of both the parties hereto; that the estate of the said Burgess was divided by commissioners, a copy of the plat accompanying the report of said commissioners was duly filed before the commissioners in this cause; that the land now occupied by the said Hall was delineated upon the said plat showing the southerly boundary of the said Hall towards the said Harris; that the Benjamin Allen plat, it appears from the testimony and from inspection of the plat itself, reproduces and prolongs the dividing line between the parties as delineated upon the Burgess Partition plat; that it is a principle of law that cannot be gainsaid that when one party to a partition has acted upon the same, he is estopped from disputing the validity of said partition and of any apportionment or partition made thereby.

"*Third.* That it clearly appears that the line between the parties Hall and Harris has been marked out and delineated

and that there is privity between the partitioner Harris and the respondent Hall, and the said facts being established, there is a boundary line that has been recognized between the parties which the commissioners, according to the principles which they announced as determining this case, are not at liberty to disregard ; that the line between the parties as delineated in the plat of the partition of the Joseph Burgess estate and as prolonged upon the Benjamin Allen plat and as recognized by one of the parties in privity to that partition, to wit, by Benjamin Allen, in his plat as filed, is conclusive of the rights of the parties."

The general principles adopted by the commissioners in this cause were, in our opinion, sound, and, practically, the only question to be determined by us is whether the southerly boundary line of the said Hall's interest, being the northerly line of the petitioners' or said Harris's interests had been settled and determined by their ancestors in title, or those in privity with them.

All of the tide-flowed land embraced in this suit lay between upland formerly owned by Joseph Burgess, and the harbor line as now established. As said by this court in *Aborn et al.* v. *Smith et al.*, *supra*, by Durfee, C. J., delivering the opinion,—"The establishment of a harbor line, we have held, amounts to an implied permission to the riparian proprietors within it to fill out to it. The question is, how fill out to it? We answer, fill straight out to it. The owners of the upland are impliedly permitted to carry the upland forward to the harbor line so that each owner will occupy the part which is abreast his own land. There may be exceptional cases where the shore or harbor line is so peculiar that permission to fill straight out cannot be implied." It was laid down in that case that, in the circumstances thereof, the dividing line between the water fronts there, in case the parties had not established one for themselves, was a line drawn from the shore end of the dividing line of the upland to the harbor line so as to intersect it at right angles.

It is claimed on behalf of said Hall that inasmuch as the ancestor in title of said Hall, said Harris and the petitioners,

was Joseph Burgess, that there is a privity between them and that the boundary line between them was fixed in the partition of the said Joseph Burgess estate. · Boundary lines, so far as fixed between ancestors in title, would bind their successors in title, but unless the ancestors fixed rights and boundaries, there is no privity between successors in relation thereto merely because the land once belonged to a common ancestor in title.

Joseph Burgess died in 1829, and his farm, then lying in Cranston, was divided by commissioners appointed by the Court of Probate of that town in 1830–31. The commissioners in that partition set off to James Burgess (also sometimes called James P. Burgess) lot No. 6 on the plat accompanying their report; to Freelove Waterman lot No. 5, being next south of said lot No. 6; to Dolly Colvin lot No. 4, being next south of said lot No. 5; and to Joseph Burgess lot No. 7, being next north of said lot No. 6. The respondent Hall acquired title to the tide-flowed land appertaining to lot No. 6 set off to James P. Burgess; and one, Benjamin Allen, acquired title to said lots 4, 5, 7, and some others on said plat, and of course to the tide-flowed lands appertaining thereto. All of the above-mentioned lots as marked on said partition plat extended only to high-water mark, and they were set off merely by their numbers on the plat to which reference was had for quantity and boundaries of said lots. The only reference to any water boundary in the report was as follows, viz.: "To Samuel Burgess in addition to what he had before received, a lot of land No. 1 on the south side of said farm containing 1¾ acres; and to Thomas Burgess in addition to what he had before received, lot No. 2 containing 3¼ acres, the lot on the north side of said farm formerly deeded to Samuel and Thomas Burgess by Joseph Burgess was bounded by the salt water, we have extended their rights unto the river" (*sic*, but we understand that *into* the river was intended) "as far as the right of the grantor extended." The north line of the farm nowhere approached the boundary lines of lot No. 6, set off to James Burgess in the partition.

We fail to see how the partition of the Joseph Burgess estate in 1830–31 fixed the boundary lines of James P. Burgess' interests below high-water mark. Apparently James P. Burgess himself did not regard his north line so definitely fixed by the partition as to preclude the desirableness of his agreeing with his abutter on the north as to his north line, as evidenced by exhibit No. 13 to the commissioners' report in this suit, being a quitclaim deed from said Burgess to Benjamin Allen of all his right, title and interest north of his, said James P. Burgess' north line, describing the course and concluding that description in this wise :—"and to continue said course to the channel of Providence river, or so far as they have a right so to do." This quitclaim dated May 31, 1833, was accepted by Benjamin Allen, and thus James P. Burgess' north line was settled to the harbor line. This line as thus settled is shown in a plat (exhibit No. 14) of the whole of said James P. Burgess' land as claimed by him, but inasmuch as said Benjamin Allen had nothing to do with that plat, it has no binding force or effect upon him below high-water mark other than as to the north line.

It is further claimed by said Hall that said Benjamin Allen had his upland and his interests in tide-flowed land platted August 9, 1832, and again in 1856–1857, both which plats were duly recorded by said Allen or his heirs, and both of which plats extended eastward to the harbor line as at those respective times it had been established, the later plat being but an extension of the earlier one, out to a later harbor line. Said Allen's land lying both north and south of the James P. Burgess lot No. 6, was all included in said Benjamin Allen's plats, and so of course said Allen's land appeared in two sections separated by the James P. Burgess lot all drawn to scale, on one of which plats said Burgess land is marked "James P. Burgess Land," and on the other "Burgess Estate." The northern line of the Burgess lot on said plats, being the southern line of Allen's north section, was delineated as a straight line from Pawtuxet turnpike to the harbor line on the course from said turnpike to high-water mark as given on the Burgess division plat, and which line

had been agreed on by said James P. Burgess and Benjamin Allen as mentioned above, which is the undisputed line to-day, to which no one excepts in these proceedings.

The southerly line of the James P. Burgess lot, being the northerly line of the southern section of the Allen land delineated on the said Benjamin Allen's plats, is very nearly parallel with 'the northerly line of said Burgess lot, and is apparently a projection of the southerly line of said James P. Burgess lot as delineated on the Joseph Burgess partition plat, on the same course to the harbor line. On said Benjamin Allen plats a street named Friend street is delineated on the north side of the southern section of the Allen land, being the southern line of the said James P. Burgess land, half of said street being taken from each adjoining proprietor. A dotted line through the middle of said street purports to be the exact line and on the strip between the dotted line and the northern row of lots as platted on the Allen side is printed the words "Private property of Benjamin Allen."

Said Hall claims that these Allen plats correctly describe the boundary line between himself and the owners of land south of him, whether it be the petitioners, or said Harris, and that the owners of such adjoining land are estopped, by these Allen plats made and recorded by the latter's ancestor in title, from denying the correctness of the line between them so delineated thereon, and that taken in connection with the Burgess division they establish a line agreed on by the owners or their ancestors in title.

In determining the effect of these Allen plats, if any, upon the question under consideration it is important to note what recognition had been given to them, and by whom.

The proof before the commissioners in this suit shows that in 1860, after Benjamin Allen's death, commissioners were appointed by the Court of Probate upon the request of Edward W. Allen, a son, and George E. Sammis, a grandson, being sole heirs-at-law of said Benjamin Allen, to divide certain lots designated upon a "Plan of Land belonging to Benjamin Allen in Cranston, R. I., by J. Howe, 1856, 1857," that said last-mentioned commissioners set off to one or the

other, said E. W. Allen or said Sammis, the lots so desig-
nated by numbers on said plat, including the lots between
Allen's avenue and the harbor line abutting on the north on
said Friend street; that on July 3, 1871, said E. W. Allen
and said Sammis conveyed to the respondent Henry L. Ald-
rich by warranty deed in which both united, "that tract of
land situate in said Providence and bounded northerly on land
formerly of James P. Burgess, easterly on the harbor line
in Providence river as the same now is or may hereafter be
established, southerly on Spring street as laid out and delin-
eated on that plat called 'Plan of land belonging to Benja-
min Allen in Cranston, R. I. by J. Howe, 1856, 1857,' and
recorded   ,   .   .   , and westerly on the westerly side or line
of that strip or parcel of land laid out and designated on said
plat and thereon designated and marked Allen's avenue.
Reference to said plat being hereby made  .  .  .   but ex-
cepting from all' the foregoing covenants all the strips and
parcels of land marked out and delineated upon the plat
aforesaid as avenues, streets or gangways, reference to said
plat being had for the same;" that on the same day the said
Edward W. Allen and George E. Sammis conveyed another
tract of land "bounded northerly on the northerly line of that
strip or parcel of land laid out and delineated on the 'Plan
of land belonging to Benjamin Allen in Cranston, R. I. by J.
Howe, 1856, 1857,' and recorded in the office of the town
.  .  .   and on said plat designated as 'Spring Street,' east-
erly on the harbor line in Providence river as the same now
is or may hereafter be established, southerly on the southerly
line of the lands covered by said plat as said southerly line
is drawn thereon to said harbor line, and westerly on the
westerly side or line of that strip of land laid out and de-
lineated on said plat and thereon designated and marked as
Allen's avenue, reference to said plat being hereby made;"
that said Henry L. Aldrich by deed dated November 27,
1893, conveyed to Henry M. Taber that tract of land in the
city of Providence "bounded northerly on the land formerly
of James P. Burgess, .easterly on the harbor line in Provi-
dence river as the same now is or may hereafter be estab-

lished, southerly on the southerly line of the land covered in that plat called 'Plan of land belonging to Benjamin Allen in Cranston, R. I. by J. Howe, 1856, 1857,' and recorded," etc., "as said southerly line is drawn thereon to said harbor line, and westerly on the westerly side or line of that strip of land delineated on said plat, and thereon designated 'Allen's Avenue,' or however otherwise said premises may be bounded and described, being the same premises described in those two deeds to said Henry L. Aldrich from Edward W. Allen and George E. Sammis bearing date July 3, 1871 and recorded," etc., "to which reference is made;" that the said Henry M. Taber having deceased, the petitioners in these proceedings having derived title under said Henry M. Taber's will, conveyed individually and the said Mary Taber as executrix under said will, on November 4, 1899, after the beginning of these proceedings, quitclaimed to the respondent Harris all their right, title, and interest in and to "the lands, river-flats and riparian rights situate in said Providence, R. I. described as a tract bounding westerly on Allen's avenue as delineated upon that plat entitled 'Plan of land belonging to Benjamin Allen, in Cranston, R. I. by J. Howe, 1856, 1857,' a copy of which plat is recorded," etc., "easterly on the harbor line as the same is now established, northerly on the centre line of Friend street (now called Swan street) as delineated upon said plat, and southerly on a line drawn at an angle of 90 degrees with said harbor line and extending westerly therefrom to said Allen's avenue which line if extended westerly would pass through a point at the intersection of the westerly line of Allen's avenue and the northerly line of Square street (now Oxford street) as delineated upon said recorded plat."

So much for the deeds made of the land abutting on the south side of the James P. Burgess land, or on Friend street east of Allen's avenue in which reference is made to said Benjamin Allen plats, save that two mortgages referred to in the deeds from said Aldrich to Henry M. Taber we have not referred to, as neither they nor copies thereof are among the exhibits presented in this case, but as one of those mortgages

is from said Aldrich to said E. W. Allen and George E. Sammis and bears the same date as the deeds from the mortgagees to the mortgagor, we infer that it was given to secure the purchase money in whole or in part, and that the description therein was identical with that in those deeds; and also that, as the other mortgage was from said Aldrich to said Henry M. Taber to whom Aldrich subsequently conveyed the land, the description in the mortgage doubtless corresponded with the description of the subsequent deed from the mortgagor to the mortgagee.

The evidence shows that James P. Burgess in his lifetime made no conveyances of lot No. 6 on the Joseph Burgess partition plat east of Allen's avenue, or the railroad track which ran through or near Allen's avenue, further than to fix the northern line of his lot by quitclaim to Benjamin Allen in 1833 (exhibit No. 13). His heirs in 1854, after his death conveyed to Bradford Allen all their right, title, interest, property, claim and demand in and to "a certain tract or parcel of land situate in said Cranston and bounded and described as follows,—westerly by the track of the Stonington Railroad, so called, on which it measures about 350 feet, be the same more or less, and holding the same width extends easterly, bounding northerly on land of Benjamin Allen and southerly by other land of said Allen to the channel of the Providence river—meaning hereby to convey the interest in said land which was derived by us from James P. Burgess, deceased, as heirs at law of the said James P. Burgess." That description is followed in the subsequent deeds of this land, all referring to the last above-mentioned deed to Bradford Allen; and the respondent Hall himself was one of the grantors in that deed. He was also the grantee in a warranty deed made by Elizabeth Hopkins (widow), March 7, 1888, (exhibit No. 36), the releassor in a quitclaim deed to Stephen F. Hopkins dated January 4, 1897, and the grantee in a warranty deed from said Stephen F. Hopkins executed later on said January 4, 1897, which is the latest deed in evidence referring to said James P. Burgess' estate made by said Hall or his ancestors in title.

It will be observed that the conveyances made by the petitioners' predecessors in title all describe their north line as bounding on land now or formerly of James P. Burgess while recognizing the existence of the Benjamin Allen plat, and the only conveyance made by the petitioners themselves bounds said Harris on the centre line of Friend street, and made no mention of the James P. Burgess land. Neither said Hall nor any of his predecessors in title ever so much as even referred to the Benjamin Allen plats.

It will be further observed that neither said Hall nor any of his predecessors in title derive title in any way from the petitioners or any of their predecessors in title, by deed or other instrument depending upon or relating to said Benjamin Allen plats. The petitioners have a perfect right to convey such part of their land to said Harris bounding upon the centre of Friend street as delineated on said plat as they choose and said Harris will take thereunder according to the description, whether that takes him to the north line of the petitioners' land or not. That description bounds him upon a certain ascertainable line, and does not take him further, whoever may be the owner of the land north of the centre of Friend street, whether it be Hall or the petitioners. Hall is a stranger to that conveyance and to all others made by the petitioners or their predecessors in title to land east of high-water mark since the division of the Joseph Burgess estate made in 1830–31. That division bounded all the heirs of said Joseph Burgess merely as to the land above high-water mark at which mark the boundary lines fixed in said division stopped, so there was no privity between the heirs of said Joseph Burgess or their successors in title by virtue of said division outside of or east of such high-water mark.

As to Hall and his predecessors in title they have never recognized the existence of the Benjamin Allen plat in any of their conveyances. They have as utterly ignored it as much as if no such plat had ever been in existence.

The law as to estoppel applicable to the case under consideration, it seems to us, was correctly indicated in *Aborn et al.* v. *Smith, supra,* where this court through Durfee, C. J., in

delivering the opinion, used this language (page 374), viz.: "The defendants also rely on a judgment entered in 1856, in an action of partition between the complainants or their ancestors in title. In that case the plat which is referred to and made a part of the record, represents the water front of the complainants as bounded towards the defendants by the dividing line of the upland prolonged. We do not see how the defendants, who are strangers to this judgment, can have the benefit of it by way of estoppel, there being no evidence that they have acted upon it with the acquiescence of the complainants, so that it would now be inequitable for the complainants not to hold themselves bound by it."

Finding no evidence that either said Hall or his predecessors in title have ever acted upon the Benjamin Allen plats with the acquiescence of the petitioners, so that it would now be inequitable for the petitioners not to hold themselves bound by them, we fail to see how the petitioners are estopped by the said Benjamin Allen plats.

The respondent Hall contends that the case at bar is so similar to *Brown* v. *Goddard*, 13 R. I. 76, as to be practically governed by it. We fail to see any similarity between the two cases. In *Brown* v. *Goddard*, a common ancestor of both parties had platted land before any harbor line had been established, with the lateral lines of the lots on the plat running out beyond high-water mark and over tide-flowed land with the outer ends not closed, thus indicating that they were intended to be indefinitely extended. In selling these lots he referred to the plat in designating the lots by their numbers and also in the description stated that they extended backward to the channel of the river leading to Seekonk. The court held that the unclosed lateral lines extending out beyond high-water mark into the river indicated the direction to the channel, or harbor line when established. On the Burgess division plat, however, there was no boundary or lines drawn below high-water mark to indicate direction to the harbor line, the boundary line stopping at high-water mark and only bounding the upland thereto.

In our opinion the southerly line of the respondent Hall's

land had not been established before the commencement of these proceedings, and, therefore, that as to that line the report of the commissioners should be approved.

Inasmuch as all the other lines established by the commissioners have already been agreed/upon by the parties in interest, and no exception has been taken thereto, we see no reason why the commissioners' report in reference thereto should not be likewise approved.

In the opinion of the court the report of the commissioners should be approved and the plat accompanying the same recorded.

Decree accordingly.

*Wilson & Jenckes*, for petitioners.

*Tillinghast & Tillinghast, E. D. Bassett, Francis Colwell, City Solicitor of Providence, O. L. Bosworth, Henry W. Hayes, A. C. Matteson, William A. Morgan*, for various respondents.