WALTER L. HICKS *et ux vs.* CITY OF PROVIDENCE.

DANIEL H. REMINGTON *et al. vs.* CITY OF PROVIDENCE.

JUNE 1, 1921.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)   Charitable Trusts.   Adverse Possession.*

A conveyance to trustees of property "to be forever used as a free Hall for any and all moral, religious, literary and scientific purposes, at any and all times" shows the intention of the donors to create a trust for the benefit not only of the local community but for the public at large, and is a charitable trust and the statute of adverse possession does not apply to such a trust, consequently persons purchasing from the trustee cannot acquire title against the public.

*(2)   Charitable Trusts.   Adverse Possession.*

Where a person took legal title to property subject to a trust, to maintain it as a free hall for religious and literary purposes and subsequently changed it into a dwelling house, while such act was a breach of trust it was not of such a character as to cause the statute of adverse possession to operate, and the devolution of title to the children of grantee, and the conveyance to one child by the others of their interests did not alter the situation, none of the parties being purchasers for a valuable consideration without notice.

*(3)   Adverse Possession.*

Where one is in possession under a legal title not adverse, he cannot make claim to hold the possession under another title, which is adverse.

*(4)   Equity.   Charitable Trusts.   Cy-pres.*

A fund arising out of property taken under condemnation proceedings which property originally conveyed as a charitable trust had ceased to be used for its original purposes and had been conveyed by the trustee and used by the grantee for private purposes, still belongs to the public and will be administered by application of the *Cy-pres* doctrine.

VINCENT and SWEENEY, JJ., dissenting.

PETITIONS for assessment of damages, under condemnation proceedings.   Heard on exceptions of certain petitioners and sustained.

STEARNS, J.   These are two petitions which were brought in the Superior Court for the assessment of damages caused by the condemnation of certain land by the city of Providence for a water supply (Chap. 1278, Pub. Laws, 1915). By agreement the city of Providence paid into the registry

of the Superior Court the amount of the agreed value of the land.  Jury trial was waived and the two petitions were heard together to determine the title to the fund.  The trial justice decided that the petitioner Hicks and his wife had the legal and equitable title to the fund.  The cause is now in this court on the bill of exceptions brought by Remington *et al.*

There is but little difference between the parties in regard to the facts.  In 1869 Ellathear Perry of Scituate, the owner of a parcel of land in Scituate and the building thereon, and her husband, John A. Perry, deeded the premises to said John A. Perry and two other trustees, their successors and assigns, in special trust "to be forever used as a free Hall for any and all moral, religious, literary and scientific purposes, at any and all times when not previously engaged."  The consideration of the deed, as stated therein, was the desire of the grantors to provide for the welfare of the community and the further consideration being the payment of $531 by the Good Samaritan Circle of Scituate, an unincorporated association for benevolent purposes.  The trust deed provides that the premises shall never be used for a shop, dwelling house, etc., or for any private use whatever; that the hall shall be free for all religious meetings and Sunday schools upon the payment of a sum sufficient to pay the cost of fuel, light and care of the hall, and for all moral, literary and scientific purposes upon the payment of such charges as may be agreed upon by the trustees or the committee having charge of the hall and the parties wishing to use the same.  It was further provided that said benevolent society might appoint a committee to take charge of the hall and the letting of the same, and in case no committee was appointed by the society, the trustees were directed to act as a committee.  The receipts from the use of the hall after the payment for light, heat and care were to be used in finishing, furnishing, repairing and painting the hall.  If the premises were ever used for any of the prohibited uses the trust deed provided that "the grantors or their legal

representatives may cause said premises to revert back to them, said grantors and their legal representatives, but then in that case, said premises shall always be used for the purposes of a free hall as herein stated and for no other purpose whatsoever."

The hall was used by various organizations for meetings but less and less as the years passed. In 1903 John A. Perry, sole surviving trustee, conveyed the trust estate to his wife, Ellathear Perry. The grantor therein described himself as "sole trustee of a society which formerly existed known as the Good Samaritan Circle," and stated that said society had ceased to exist; that the premises had been used for purposes in violation of the purposes of the trust and deed of May 29, 1869, and therefore revert to the original owners in accordance with the terms of said deed. Perry repaired the hall intending apparently to carry out the purposes of the trust. No use of the hall was made by the public, and after a year had passed the building was changed over into a dwelling house and has since been rented by different tenants.

John A. Perry died in 1904. His wife Ellathear Perry died in 1905 and by the terms of her will her three children, Adelbert, Nancy and Ezra became entitled to the real estate in question. In 1910 Adelbert and in 1914 Nancy by deed conveyed their several undivided interests to Ezra who later in 1914 conveyed by warranty deed to one Frank Crossley. May 14, 1915, Crossley by quit claim deed conveyed the premises to the petitioner Hicks who now claims the fund as the owner of the real estate which was condemned, both by virtue of his deed and by adverse possession. The petitioners Remington *et al* claim the fund as the surviving members of the Good Samaritan Circle. The circle has not held a meeting since 1898 and is now inactive.

The trial justice found as a fact that at the time of the conveyance by the trustee Perry in 1903, the trust had not terminated by reason of the use of the hall in any of the

ways prohibited. The court decided that the terms of the deed, the recording of the deed and the conversion of the hall into a private dwelling, established an open and notorious repudiation of the trust by the trustee, which fact must have been known to all the *cestuis*, who were then required to assert their equitable rights, and that the statute (Chap. 798, Pub. Laws) began to run from the time such knowledge was brought home to the *cestuis;* if this position was untenable, the trial court held that since the conveyance to Ellathear Perry in 1903 the legal title of said land had been held adversely by her successors in title on the principle that a person who buys from a trustee, even with knowledge of the trust, may hold adversely. Without discussing this proposition of law or the question whether it is applicable to the case at bar, we think the decision of the Superior Court was erroneous. The trial justice does not state whom he finds to be the beneficiaries but apparently accepts the claim of counsel that the *cestuis* are the surviving members of the Good Samaritan Circle. But there is no such limitation in the terms of the trust deed. The association is authorized to appoint a committee to take charge of the hall and the renting thereof. The income is to be applied for the repair and maintenance of the hall. No other fund is provided for to carry out the trust. If the society fails to appoint a committee, the trustees are to act as a committee, but neither trustees nor committee are to receive any compensation. The creators of the trust lived in the village of Richmond, which is a part of the town of Scituate. The enjoyment of the use of the trust estate, of necessity, was limited by its location in the village of Richmond, but we find nothing in the deed which shows any intention to limit the right to use the hall to the inhabitants of either Richmond or Scituate. The provision that the hall should be free for *all* religious meetings and for *all* moral, literary and scientific purposes is very broad and shows the intention of the donors to create a trust for the benefit not only of the local community in which they lived but for the public at large.

Our conclusion is that this was a charitable trust for the benefit of the public. The statute does not apply to such a trust. The petitioners could not and have not acquired title by adverse possession against the public. *Simmons* v. *Cornell,* 1 R. I. 519; *Almy* v. *Church,* 18 R. I. 182.

(2) Even if the trust should be held to be limited for the benefit of the inhabitants of Richmond village or the town of Scituate only, the petitioners Hicks and wife have not acquired a title by adverse possession and the case of *Mowry* v. *City of Providence,* 10 R. I. 52, cited by petitioners is consequently not an authority in support of their claim. Ellathear Perry by the conveyance from her husband, the trustee, took the legal title subject to the trust. The conveyance was made by the trustee without legal right. Even if the terms of the trust had been broken, the original donor under the provisions of the deed of trust, upon a reconveyance made to her would have taken the legal title subject to the trust. That there was no intention at first on the part of Ellathear Perry to repudiate the trust, seems to be plain from the fact that the hall was repaired and kept for a time for public use. The change of the hall into a dwelling house and the use as such, without any change thereafter in the legal title, was a breach of trust but not of such a character as to cause the statute of adverse possession to operate. The children at the death of their mother acquired no greater right by inheritance than the mother had. The conveyance by Adelbert, the son, in 1910 and by Nancy, the daughter, in 1914 to the son Ezra did not alter the situation. The parties were in possession under a legal title which was subject to a trust and were not purchasers for a valuable consideration without notice. Being in possession under a legal title which was not adverse, they can not claim to hold the possession under another title which is adverse. *Nichols* v. *Reynolds,* 1 R. I. 30; *Searle* v. *Laraway,* 27 R. I. 557.

In this case there is no purchaser for value without notice. The first conveyance to a stranger to the trust was made

to Crossley in February, 1914, but both he and Hicks had notice of the trust and each took title subject to the trust. Our conclusion is that neither of the petitioners is entitled to the fund, which belongs to the public and in the circumstances must be administered by application of the *cy pres* doctrine.

The exceptions of Remington *et al* are sustained and the case is remitted to the Superior Court for further proceedings.

SWEENEY, J., dissents on the ground that the property located in the village of Richmond, in the town of Scituate, was conveyed to trustees to be used for specified and limited purposes; that the surviving trustee openly and publicly repudiated the trust, and thereafter, he and his successors in title to said property, including Mr. Hicks, claimed to hold the same as their own, discharged from said trust; that such repudiation and claim was known to the *cestuis que trust*, and they neglected to enforce their equitable rights to use said property for said trust purposes, until the statute of possession has given a good and rightful title to the claimant, Hicks and wife, and bars the *cestuis que trust* from now enforcing any claim to the use of said property.

VINCENT, J., concurs with SWEENEY, J., in his dissent.

*Huddy, Emerson & Moulton.  E. Butler Moulton,* for Hicks *et ux.*

*John P. Beagan,* for Remington *et als.*

*Elmer S. Chace,* City Solicitor, for City of Providence.