Warren H. HALL et al.,

v.

Alfred NASCIMENTO et al.

No. 89–162–Appeal.

Supreme Court of Rhode Island.

July 2, 1991.

Turner C. Scott, Kelly, Howe, Scott & Kelley, Newport, for plaintiffs.

Lauren E. Jones, Robert S. Thurston, Jones Associates, and Donald G. Elbert, Providence, for defendants.

Michael Rubin, Sp. Asst. Atty. Gen., Providence, amicus curiae, Atty. Gen.

## OPINION

FAY, Chief Justice.

This matter is before the Supreme Court on appeal by the defendants from a judgment entered in the Superior Court granting the plaintiffs, Warren H. and Catherine E. Hall, title to a particular tract of land in the town of Portsmouth located in an area known as Common Fence Point. The defendants, Alfred Nascimento, William Warren, Francis Shay, John Silva, and Jan Johnson, appeal in their capacities as trustees of the Common Fence Point Improvement Association (association). The association itself is also a named defendant in this action. The defendants assert that the trial justice misconceived evidence and consequently erred in holding that Mount Hope Bay formed the western boundary of the plaintiffs' property, that the plaintiffs' predecessors in title acquired littoral rights in the property, and that the plaintiffs had title to said land by deed or adverse possession. For the reasons set forth below, we reverse the trial justice's decision.

The property in question consists of two adjoining plots of land in the Hummock Point Beach area of Portsmouth known as lot Nos. 25 and 26 and an additional 270 lineal feet of land primarily created by fill from the dredging of Mount Hope Bay that extends from lot Nos. 25 and 26 to the shore of Mount Hope Bay. Prior to the dredge-and-fill operation a ten-foot-wide strip of beach area constituted the shoreline of Mount Hope Bay along the western boundary of lot Nos. 25 and 26. Lot No. 25 and lot No. 26 were deeded to plaintiffs' predecessors in 1921 and 1922, respectively, by the common grantor Henry A. Brown Corporation (Brown corporation). At the time of this initial conveyance the lots were part of the Hummock Point Beach Plan No. 1 (plan 1). Although no metes-and-bounds descriptions of the parcels appear in the deeds conveying the parcels and the deeds are silent regarding riparian or littoral rights, plan 1, which is referenced in the deeds, clearly defines the measurements and boundaries of the lots.

In 1926 Brown corporation, the common grantor, deeded to defendants' predeces-

sors, the then-trustees of the association, "all right, title and interest of the said grantor in and to all land, marshes, sand bars, causeways, and riparian rights between high and low water marks on the shores of Mount Hope Bay and Sakonnet River, as shown on said Plans No. 1 and No. 2 Hummock Beach Point." The interest conveyed was to be held and maintained by the association in trust for "the sole use and benefit of all property owners, present or future, of all lots shown on said plans." In 1948 the Army Corps of Engineers dredged a channel in Mount Hope Bay. The association was granted permission by the State of Rhode Island to place the fill from said dredging along the shore of the Common Fence Point area, thereby building up and greatly expanding the ten-foot-wide shoreline and beach area abutting lot Nos. 25 and 26. The fill increased the ten-foot strip by 260 feet, creating a 270–foot-wide area of shoreline between the waters of Mount Hope Bay and the original boundaries of lot Nos. 25 and 26 as shown on plan 1. Following the dredge and fill along the shores of Common Fence Point the tax assessor for the town of Portsmouth represented the filled area as a public right of way. For taxing purposes lot No. 25 and lot No. 26 were merged and labeled as lot No. 43. The original ten-foot strip is included in and designated as part of the right of way.

There is no dispute that plaintiffs are the owners of lot Nos. 25 and 26 as represented on plan 1. The present challenge concerns the land abutting lot Nos. 25 and 26 to the west, which extends to Mount Hope Bay. It is therefore necessary for this court to examine not only the boundaries of the property as set forth in the deed conveying the title of lot Nos. 25 and 26 to plaintiffs' predecessors but also the nature and history of the parcel of filled land claimed by both plaintiffs and defendants.

■ It has been established by this court that in cases such as this, in which the pertinent deeds do not contain detailed metes and bounds descriptions of the property being conveyed and a plat map is referenced describing the parcel, the maps

and the deeds are to be considered together in determining the boundaries of the property. *Tingley Brothers v. City of Providence*, 8 R.I. 493, 506–07 (1867); *Kenyon v. Nichols*, 1 R.I. 411, 417–18 (1851). Plan 1, the plat map referenced in the original deeds conveying lot No. 25 and lot No. 26 contains two solid and separate lines divided by a ten-foot-wide area of land delineating the western boundary of the lots and the high-water mark of Mount Hope Bay, respectively. The solid lines indicate that the rights to the shoreline were not included in the original conveyance by Brown corporation. The fact that lot No. 25 and lot No. 26 do not encompass the high-water mark is also reflected by the survey conducted at the behest of plaintiffs in 1987. The survey demonstrated that, as platted, the western boundary of plaintiffs' land does not extend to the high-water mark.

■ In *Bailey v. Burges*, 11 R.I. 330 (1876), we recognized that when a common grantor conveys shoreline property, he may retain the riparian rights to the property by keeping title to a strip of land above the high-water mark. The riparian rights will then attach to the property abutting the water and encompassing the high-water mark. *Id.* at 331–32. We are aware of the fact that the matter before us involves littoral, not riparian, rights; but we are of the opinion that similar principles of law apply when either riparian or littoral rights are called into question. Therefore if the common grantor in the present case did not convey the area of land including the high-water mark, plaintiffs' predecessors did not acquire littoral rights. Furthermore plaintiffs acknowledged that the common grantor did not convey the ten-foot strip abutting lot Nos. 25 and 26 by referring to the area as "the old ten (10′) foot area maintained as a beach for the use of all community association members."

■ It has been determined by this court that when a deed is silent regarding littoral rights, the boundary lines presented on the plat plan referenced in said deed determine the owner's rights to the shore-line property. Boundaries are deemed to be fixed by the plat plan whether they lie at the high-water mark or beyond. *Dawson v. Broome*, 24 R.I. 359, 372, 53 A. 151, 157–58 (1902); *Taber v. Hall*, 23 R.I. 613, 624–26, 51 A. 432, 436–37 (1902); *Brown v. Goddard*, 13 R.I. 76, 81–82 (1880). After examining the deeds pertinent to the property with which we are concerned, in conjunction with the appropriate plat map (plan 1), we are of the opinion that definite western boundaries to both lot No. 25 and lot No. 26 are discernable. We conclude that the boundaries do not encompass the ten-foot strip of land that, prior to the dredging and filling of Mount Hope Bay, abutted the waters of the bay and consequently carried with it the littoral rights to that area. Therefore, we find that the trial justice erred in determining that plaintiffs' predecessors, and subsequently plaintiffs, acquired title by deed to the land extending to the high-water mark.

■ To claim ownership rights in the filled area successfully, plaintiffs must prove that they, through their predecessors, were entitled to littoral rights to the tidelands that were filled. Such littoral rights could only be claimed if plaintiffs' predecessors had acquired title to the ten-foot strip. Because we have determined that plaintiffs' predecessors did not acquire rights to the ten-foot strip by deed, we conclude that plaintiffs do not hold title to the filled area abutting the ten-foot strip. This determination, however, does not conclude our consideration of the facts presented. We are now compelled to address the trial justice's alternative finding that plaintiffs hold title to the filled area by adverse possession.

Prior to the dredge-and-fill operation the area, which is now claimed by both plaintiffs and defendants, was submerged land. Because we are dealing with tidelands and littoral rights in this instance, it is necessary to examine the ownership of this property in light of the public trust doctrine. The United States Supreme Court recognizes that in accordance with the public trust doctrine, the State holds title to property that lies below the high-water mark.

"At common law, the title and dominion in lands flowed by the tide water

were in the King for the benefit of the nation.... Upon the American Revolution, these rights, charged with a like trust, were vested in the original States within their respective borders, subject to the rights surrendered by the Constitution of the United States." *Phillips Petroleum Co. v. Mississippi,* 484 U.S. 469, 473–74, 108 S.Ct. 791, 794, 98 L.Ed.2d 877, 884 (1988) (quoting *Shively v. Bowlby,* 152 U.S. 1, 57, 14 S.Ct. 548, 569, 38 L.Ed. 331, 352 (1894)).

It is well settled in Rhode Island that pursuant to the public trust doctrine the State maintains title in fee to all soil within its boundaries that lies below the high-water mark, and it holds such land in trust for the use of the public. *State v. Ibbison,* 448 A.2d 728, 730, 732–33 (R.I.1982); *Nugent v. Vallone,* 91 R.I. 145, 152, 161 A.2d 802, 805 (1960); *Dawson,* 24 R.I. at 372, 53 A. at 157–58; *Allen v. Allen,* 19 R.I. 114, 115–16, 32 A. 166, 167 (1895); *Bailey,* 11 R.I. at 331; *Engs v. Peckham,* 11 R.I. 210, 222–24 (1875); R.I. Const. art. 1, §§ 16, 17. The high-water mark on the original shoreline that existed prior to the 1948 dredge and fill was located within the bounds of the ten-foot strip of beach area, which, as we have already established, was retained by the association when lot No. 25 and lot No. 26 were conveyed to plaintiffs' predecessors. In *Carr v. Carpenter,* 22 R.I. 528, 529, 48 A. 805, 805 (1901), this court established that the owners of lands adjoining navigable waters have the right to " 'enjoy what remains of the rights and privileges in the soil beyond their strict boundary lines, after giving to the public the full enjoyment of their rights.' " The association, therefore, as owner of the land adjoining the waters, does not automatically lose all rights to the submerged soil and subsequently the filled area.

■ Such filled or submerged land owned in fee by the State and subject to the public trust doctrine may be conveyed by the State to a private individual by way of legislative grant, provided the effect of the transfer is not inconsistent with the precepts of the public trust doctrine. *Phillips Petroleum Co.,* 484 U.S. at 484, 108 S.Ct. at 799, 98 L.Ed.2d at 890–91; *Appleby v. City of New York,* 271 U.S. 364, 383–84, 46 S.Ct. 569, 574, 70 L.Ed. 992, 1000–01 (1926); *Shively,* 152 U.S. at 20, 14 S.Ct. at 555, 38 L.Ed. at 339; *Illinois Central Railroad Co. v. Illinois,* 146 U.S. 387, 445–53, 456–58, 13 S.Ct. 110, 115–17, 120, 36 L.Ed. 1018, 1040–42, 1044 (1892).

The record before us is void of information evidencing such a legislative grant of the property to either plaintiffs or defendants. Because we have determined that defendants retained the strip of land that contained the high-water mark prior to the filling of the bay, and therefore acquired littoral rights to the then-submerged area, we find that defendants continue to maintain rights in that area as long as their use of the area is not inconsistent with the public trust. *Carr,* 22 R.I. at 529, 48 A. at 306–07. The defendants' rights, however, are subservient to the State's rights in the property because the State holds title in fee subject to the public trust doctrine.

■ Having established the ownership status of the State and the rights maintained by the association, we now address the trial justice's decision that the plaintiffs acquired title to the property by adverse possession. We are of the opinion that the trial justice erred in granting the plaintiffs title by adverse possession because a private party cannot adversely possess public property. Statutorily private individuals cannot adversely possess shoreline or waterfront property located within the State of Rhode Island because such property is maintained for public use. G.L.1956 (1984 Reenactment) § 34-7-8. As established by the United States Supreme Court, however, this prohibition on adverse possession applies to all public lands owned by state governments and, therefore, is not limited to shoreline property. *Marine Railway & Coal Co. v. United States,* 257 U.S. 47, 64–66, 42 S.Ct. 32, 34–35, 66 L.Ed. 124, 129–30 (1921); *Armstrong v. Morrill,* 81 U.S. (14 Wall.) 120, 145, 20 L.Ed. 765, 772 (1871); *Lindsey v. The Lessee of Miller,* 31 U.S. (6 Peters) 666, 673–74, 8 L.Ed. 538, 541 (1832) (well settled that statutory period necessary for adverse possession does not run

against a state regarding state-owned public property); *see generally Williams v. Babcock,* 116 N.H. 819, 824, 368 A.2d 1166, 1170–71 (1976) (citing *Davenhall v. Cameron,* 116 N.H. 695, 366 A.2d 499 (1976)) (public lands not subject to adverse possession); *Thompson v. Major,* 58 N.H. 242, 244 (1878); *Hicks v. City of Providence,* 43 R.I. 484, 488–89, 113 A. 791, 792–93 (1921) (land imposed with charitable trust for good of public at large not subject to adverse possession by private individual); 3 Am.Jur.2d *Adverse Possession,* § 269 (1986). We therefore conclude that the plaintiffs do not hold title to the ten-foot beach area or the filled area by either deed or adverse possession.

For the reasons stated, the appeal of the defendants is sustained. The judgment appealed from is reversed, and the papers are remanded to the Superior Court.